UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 25-cv-23774-BLOOM/Elfenbein**

NAVAL LOGISTIC, INC.,
d/b/a MIDDLE POINT MARINA

       Plaintiff,

v.

A 50' NORTECH VESSEL,
bearing HULL ID No. AOV50021E898,
*in rem*, and RON YEFFET, *in personam*,

       Defendants.

_____ /

## ORDER ON MOTION TO INCREASE BOND

**THIS CAUSE** is before the Court upon Plaintiff Naval Logistic, Inc.'s ("Plaintiff") Motion to Increase Bond, ECF No. [51] ("Motion"). Defendants A 50 Nortech Vessel bearing Hull Id No. AOV50021E898 (the "Vessel") and Ron Yeffet ("Yeffet") (together, "Defendants") filed a Response, ECF No. [52], to which Plaintiff filed a Reply, ECF No. [56]. The Court has carefully reviewed the Motion, the opposing and supporting submissions, the record, and is otherwise fully advised. The Court also held a hearing on the Motion and considered the arguments made during that hearing. ECF No. [62]. For the reasons that follow, the Motion is granted.

## I.      BACKGROUND[1]

This action arises out of a contractual dispute between Naval Logistic and Yeffet concerning repairs and storage of the Vessel. On August 21, 2025, Naval Logistic initiated this action for claims of Breach of Contract and Maritime Lien for Necessaries. *See* ECF No. [1] at 3-

---

[1] The facts in the Background section are drawn from Plaintiff's and Defendants' respective submissions, ECF Nos. [51] and [52]. Where either party disputes the other's facts, the Court notes so. Otherwise, each side's proffered facts are taken as true for purposes of deciding the Motion.

4. According to Naval Logistic, on February 16, 2024, Naval Logistic and Yeffet entered a "Shipyard Agreement for [Naval Logistic] to store, repair, and modify the Vessel." *Id.* at ¶ 7. Pursuant to the Shipyard Agreement, "Yeffet agreed to pay [Naval Logistic] for all services provided, including charges for storage," which at the time of the filing of the Complaint, totaled $55,468.80. *Id.* at ¶¶ 8–9. Despite Naval Logistic demanding payment from Yeffet and requesting that he remove the Vessel from the premises, Naval Logistic asserts that "Yeffet has failed or otherwise refused to pay and remove the Vessel from [its] Shipyard." *Id.* at ¶ 11. Accordingly, Naval Logistics contends Yeffet has breached the Shipyard Agreement.

While conferring with Defendants' counsel on Plaintiff's anticipated Motion for Interlocutory Sale, counsel for Defendants advised that they would post bond in an agreed-upon amount in order to prevent an interlocutory sale of the Vessel. ECF No. [51] ¶ 2. On January 28, 2026, Defendants filed a Notice of Filing Release Bond in an attempt to satisfy Local Admiralty Rule E(e). *Id.* ¶ 3 (citing ECF No. [39]). The amount of the bond was $125,602.94, which included the contractual damages claimed by Plaintiff, interests, and costs (though not including attorneys' fees claimed by Plaintiff). *Id.* ¶ 4.

Plaintiff alleges that the amount of the bond was based on defense counsel's representation during telephonic conferrals that the Vessel would be removed no more than a few business days after the posting of bond. *Id.* ¶ 5. Since the original bond bore an incorrect date of arrest for the Vessel, on January 30, 2026, Defendants subsequently filed a Notice of Filing Rider/Endorsement to the Release Bond setting forth the correct date of the arrest of the Vessel. *Id.* ¶ 6. On January 29, 2026, while discussing the necessity of such a rider, Plaintiff's counsel informed Defendants' counsel that the Vessel would need to be removed from Plaintiff's facilities by February 2, 2026. *Id.* ¶ 7.

In the weeks that followed, Plaintiffs allege that Defendants' counsel repeatedly indicated that the Vessel would be removed within days, yet they repeatedly delayed its removal. *Id.* ¶ 8. After Plaintiff's counsel threatened to move to re-arrest the Vessel, Defendants' counsel agreed to remove the Vessel by February 23, 2026. *Id.* ¶ 9. However, on February 23, 2026, Defendants' counsel delayed removal, indicating that the Vessel would now be removed on February 25, 2026. *Id.* ¶ 10. Defendant, for its part, points out that the release from the Marshal was not filed until February 19, 2025, ECF No. [52] ¶ 4.

On February 24, 2026, Plaintiff's counsel spoke by telephone with Defendants' counsel, who advised that a trailering company known as WeMoveYourBoat.com LLC would arrive at 8:00 A.M. to remove the Vessel. ECF No. [51] ¶ 11. Later, Defendants' counsel advised by telephone that Defendants would like to use Plaintiff's boat lift to remove the vessel. *Id.*

On the morning of February 25, 2026, Plaintiff's counsel alleges that it called WeMoveYourBoat.com LLC, as no trailer had arrived as scheduled. *Id.* ¶ 12. Plaintiff had lifted the Vessel in anticipation of its removal. *Id.* WeMoveYourBoat.com LLC informed Plaintiff's counsel that they had been instructed on the evening of February 24, 2026 not to remove the Vessel and that Plaintiff's counsel should contact Defendants' counsel for additional information. *Id.* ¶ 13. At that point, Plaintiff's counsel learned that Nortech would be trailering the Vessel away and would do so by midday. *Id.* ¶ 14.

Nortech arrived around noon on February 25, 2026, bringing a trailer that could not accommodate the Vessel. *Id.* ¶ 15. As a result, while the Vessel was lifted a second time, Plaintiff spent significant time rebuilding the trailer within its docking facilities. *Id.* Ultimately, the Vessel's removal took 2.5 hours. *Id.* ¶ 16.

Defendants' account of February 25, 2026 differs. Defendants allege that Plaintiff tried to cancel the release of the Vessel, having "overbooked and/or forgotten" about the retrieval that day. ECF No. [52] ¶ 7. However, Defendants agree that Nortech's authorized dealer went to retrieve the Vessel, with an inspection by a surveyor to be done between 10 a.m. and 11 a.m., after which the Vessel was to be removed. *Id.* ¶ 8.

Under the Shipyard Agreement at issue, Yeffet and his "representative shall at all times act to promptly ensure that the Vessel does not prevent Middle Point Marina from carrying on its regular operations," including ensuring that removal "does not disrupt haul out operations," and failure to meet this contractual obligation shall render Yeffet and his representative "jointly and severally liable to Middle Point Marina for payment of the sum of $1,500.00 per hour for any such delay to Middle Point Marina's operations during business hours[.]" ECF No. [51] ¶ 17 (citing ECF No. [1-1] ¶14).

Thus, Plaintiff alleges that it is contractually entitled to $4,012.60 for the business interruption caused by Yeffet's failure to bring a working trailer to its facilities. *Id.* ¶ 18. In addition to this, Plaintiff claims entitlement to *in custodia legis* fees accruing at a rate of $342.40 per day, totaling $9,587.20 for the 28 days of storage between January 28, 2026 and February 25, 2026, which Plaintiff says occurred as a direct result of Yeffet's misrepresentation that the Vessel would be removed within a few days of posting bond. *Id.* ¶¶ 18, 19. In total, Plaintiff claims Yeffet is contractually liable for an additional sum of $13,599.70 and therefore asks the Court to increase the amount of the bond required by Yeffet by an additional $13,599.70. *Id.* ¶¶ 20, 21.

Defendants argue that the release was not filed until February 19, 2026, and the Vessel was removed within four business days of that release. ECF No. [52] ¶ 14. Defendants argue it "would have been in breach of the Court order and the Marshal's Order if they had tried to" remove the

4

board "before the Marshal released the vessel." *Id*. There was no fraud or misrepresentation, as evidenced by the four business days between release and removal. *Id*. Moreover, Defendants allege that the charge for removing the Vessel on February 25, 2026 was already paid in the amount of $1,048.60, rendering the amount now sought excessive. *Id*.

## II. LEGAL STANDARD

Under Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rule"), "[w]henever security is taken, the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if surety shall be or become insufficient, new or additional sureties may be required on motion and hearing." Although Supplemental Rule E(6) does not clearly indicate what justifies new or additional sureties, the Eleventh Circuit has held that the grounds needed for an increase in the bond amount are "fraud, misrepresentation or mistakes sufficient to justify the [vessel's] rearrest . . .. A mistake sufficient to justify rearrest requires that it be tinged with fraud or misrepresentation or that it be the mistake of the court and not that of the claimant." *Industria Nacional Del Papel, CA. v. M/V Albert F.*, 730 F.2d 622, 626 (11th Cir.1984) (quoting Moore's Federal Practice, § E.14 at E–710–11 n. 30 (2d ed.1983)); *L & L Marine Transp., Inc. v. M/V Hokuetsu Hope*, 895 F.Supp. 297, 301 (S.D.Ala.1995) (the plaintiff's motion for new or additional security was denied where there was no evidence of fraud or misrepresentation and the mistake was that of the plaintiff in underestimating the severity of the damage to the M/V AMY ANN and not a mistake of the court).

## III. DISCUSSION

Plaintiff asserts—and Defendants do not dispute—that Defendants' counsel made repeated representations of Defendants' intent to remove the Vessel over the course of 28 days and repeatedly failed to actually do so. Defendants argue that they could not have removed the Vessel prior to release by the Marshal. Thus, the Court must answer three questions to resolve the Motion.

First, the Court must answer whether the parties could have agreed to the Vessel's removal prior to release from the Marshal. Second, if so, the Court must answer whether Defendants made misrepresentations that factored into the initial bond and therefore render the current bond insufficient. Third, if so, the Court must determine what amount of increase is warranted given those misrepresentations.

As an initial matter, Defendants offer no authority for the proposition that parties must wait for a release from the Marshal before they may arrange for a vessel to be removed. In this regard, the Court could grant the motion by default according to Local Rule 7.1(c).

Nonetheless, the Court considers the matter on the merits and finds that the parties were free to stipulate to the removal of the Vessel. Supplemental Rule E(5) addresses the release of property:

> Any vessel, cargo, or other property in the custody of the marshal or other person or organization having the warrant may be released forthwith upon the marshal's acceptance and approval of a stipulation, bond, or other security, signed by the party on whose behalf the property is detained or the party's attorney and expressly authorizing such release, if all costs and charges of the court and its officers shall have first been paid. Otherwise no property in the custody of the marshal, other person or organization having the warrant, or other officer of the court shall be released without an order of the court; but such order may be entered as of course by the clerk, upon the giving of approved security as provided by law and these rules, or upon the dismissal or discontinuance of the action; but the marshal or other person or organization having the warrant shall not deliver any property so released until the costs and charges of the officers of the court shall first have been paid.

Local Admiralty Rule E(8)(a) further contemplates release via stipulation, explaining:

> *Release by Consent or Stipulation.* Subject to the limitations imposed by Supplemental Rule E(5)(c), the Marshal may release any vessel, cargo or property in the Marshal's possession to the party on whose behalf the property is detained. However, as a precondition to release, the Marshal shall require a stipulation, bond, or other security, expressly authorizing the release. The authorizing instrument shall be signed by the party, or the party's attorney, on whose behalf the property is detained.

The crux of each provision is that the parties could stipulate to the conditions for release of the Vessel and were not required to wait for release by the Marshal. As a result, Defendants' argument that they had to wait for the Marshal's release of the Vessel is without merit.

Because the parties were free to stipulate to the Vessel's release, the Court turns to the question of whether Plaintiff's have shown a misrepresentation sufficient to justify increase of the bond. Defendants do not dispute that they made representations about intending to remove the Vessel within "no more than a few business days of posting bond" or that such representations factored into the amount of bond sought. ECF No. [51] ¶ 5. Furthermore, Defendants do not dispute that it made later representations about when they would remove the Vessel and repeatedly failed to do so without sufficient explanation or justification. *Id.* ¶ 8. Indeed, at the hearing on the matter, Defendants merely asserted that they preferred to coordinate the removal of the vessel through the Marshal, admitting that they did not convey its belief that they ought to wait for the Marshal's permission until March 27, 2026. As such, the Court finds that Plaintiff has demonstrated the sort of mistake tinged with misrepresentation required in the Eleventh Circuit to justify an increase in bond.

As to the amount of increase sought by Plaintiff, the Court finds it fair and reasonable. Defendants do not dispute that as a condition of Plaintiff retaining custody of the Vessel during the pendency of this suit, Plaintiff sought a $100 per day custodian fee; on-land storage of $3.85 per foot per day plus $27.50 per day for shore power; routine and/or necessary repairs and services at Plaintiff's standard rates; and the applicable Florida sales tax of 7%. *Id.* ¶ 18 (citing ECF No. [5-2] ¶ 7). Thus, Plaintiff's *in custodia legis* fees of $9,587.20 for the 28 days of additional custody are a fair and reasonable reflection of the costs required for continued storage beyond when Defendants represented that the Vessel would be removed.

Moreover, Defendants do not dispute that Nortech brought a trailer that could not accommodate the Vessel, leading to an approximately 2.5-hour removal effort. Under the Shipyard Agreement at issue, interruptions of that sort would lead to Defendants owing $1,500 per hour of delay, yielding a $4,012.50 charge here. As such, increasing the bond by such an amount strikes the Court as fair and reasonable. Together, the *in custodia legis* fees and delay fees total $13,599.70.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1.   Plaintiff's Motion, **ECF No. [51]**, is **GRANTED**.

2.   **By July 13, 2026**, Defendants shall submit to the Clerk of Court an additional **$13,599.70** as bond in this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 6, 2026.

 

 

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record