**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-23774-BLOOM/Elfenbein**

NAVAL LOGISTIC, INC.,
d/b/a MIDDLE POINT MARINA,

      Plaintiff,

v.

A 50' NORTECH VESSEL,
bearing HULL ID No. AOV50021E898,
*in rem*, and RON YEFFET, *in personam*,

      Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Counter-Defendant Naval Logistic, Inc.'s

("Counter-Defendant") Motion to Dismiss Counter-Plaintiffs' Amended Counterclaim, ECF No.

[53] ("Motion"). Counter-Plaintiffs A 50 Nortech Vessel bearing Hull Id No. AOV50021E898

(the "Vessel") and Ron Yeffet ("Yeffet") (together, "Counter-Plaintiffs") filed a Response, ECF

No. [57], to which Counter-Defendant filed a Reply, ECF No. [60]. The Court has carefully

reviewed the Motion, the opposing and supporting submissions, the record, and is otherwise fully

advised. For the reasons that follow, the Motion is granted in part and denied in part.

## I.    BACKGROUND

In Counter-Plaintiffs' Amended Counterclaim, they allege that in July 2021, they brought

the Vessel at issue to Counter-Defendant's shipyard for "repairs and a basic overhaul." ECF No.

[48] ¶¶ 4, 5. Counter-Defendant was working on the Vessel until shortly before the Vessel's arrest

in September 2025. *Id.* ¶ 6. Counter-Plaintiffs paid Counter-Defendant a total of $220,555 for

repairs to the Vessel. *Id.* ¶ 7.

In October 2020, the parties contracted for engine repairs. *Id*.; *see also* ECF No. [48-1] (the "2020 Invoice"). Counter-Defendant agreed to remove the two existing engines and replace them with new engines. *Id*. Counter-Defendant represented to Counter-Plaintiffs in the contract that the two new engines had factory warranties from Mercury Marine. *Id*. Counter-Plaintiffs would not have contracted with Counter-Defendants for the new engines if the engines did not come with warranties. *Id*. Counter-Defendant also represented in the contract that all work performed by Plaintiff was warranted against defect. *Id*.

The repairs were undertaken, and several inspections and sea trials were done. *Id*. ¶ 8. Ultimately, it took until 2023 for Counter-Defendant to complete many of the basic repairs, in breach of the parties' contract. *Id*. ¶ 9.

Later, there was more work that Counter-Plaintiff requested to be done, including paint and upholstery work. *Id*. ¶ 10; see also ECF No. [48-2] (the "2024 Invoice"). This work did not meet expectations and was meant to be completed within 14 weeks of Counter-Plaintiffs making their first deposit. *Id*. ¶ 10.

Overall, Yeffet paid in excess of $220,000 for the work done on the boat, including the replacement of the engines. *Id*. ¶ 11.

Counter-Plaintiffs assert claims for Breach of Contract regarding 2020 Invoice (Count I), Breach of Contract regarding the 2024 Invoice (Count II), Breach of Contract regarding the 2020 Invoice – Contract Delay Damages (Count III), Breach of Warranty of Workmanlike Performance – Upholstery and Painting (Count IV), and Negligent Misrepresentation (Count V).

In the Motion, Counter-Defendant argues the Amended Counterclaim should be dismissed for failure to state a claim. ECF No. [53]. Specifically, Counter-Defendant argues that the contracts at issue—if viewed in their complete form—and estimates of the work to be done demonstrate that

Counter-Plaintiffs cannot state claims for which relief can be granted. *Id*. Counter-Plaintiffs respond that the four corners of the Amended Counterclaim suffice to state claims. ECF No. [57]. Counter-Defendant replies that Counter-Plaintiffs (i) fail to address its argument that the Court may consider extrinsic 2020 and 2024 contracts and that amendment would be futile, (ii) fail to rebut the  arguments that Counts I through III fail to state a claim, (iii) continue to assert an incorrect standard for breach of warranty of workmanlike performance, and (iv) fail to plead Count V in the alternative. ECF No. [60]. The Motion is now fully briefed and ripe for review.

## II.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts

"are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

## III.    DISCUSSION

### A.  Whether the Court May Consider the 2020 and 2024 Contracts and Associated Estimates

Counter-Defendant first argues that the Court may consider a 2020 contract, ECF No. [53-1], (the "2020 Contract"), and a 2024 contract, ECF No. [1-1], (the "2024 Contract"), along with associated estimates, ECF No. [53-2] (the "Estimates"), "which together set forth the complete agreement between the Parties and are central to the dispute" and contradict the allegations raised by Counter-Plaintiff. ECF No. [53] at 2.  Moreover, the 2024 Contract was attached to the Complaint and therefore may be considered by the Court, and the Court may consider the 2020 Contract and the Estimates attached to the Motion because they are central to Counter-Plaintiff's' case and undisputed. *Id.* at 3–4.

Counter-Plaintiffs contend that Counter-Defendant goes "outside the four corners of the [Amended] Counterclaim and seeks to argue the merits of the case," which is inappropriate on a motion to dismiss. ECF No. [57] ¶ 4. They argue that the 2024 Contract is in dispute because it is incomplete. *Id.* ¶ 10. Moreover, the invoice Counter-Plaintiffs attached "supersedes anything" attached to Counter-Defendant's Motion, as that would be outside the four corners of the Amended Counterclaim. *Id.* ¶ 14. They argue that the invoices attached to the Amended Counterclaim are the relevant contracts and should govern over the contracts attached by Counter-Defendant; at the very least, any ambiguity regarding the relationship between the documents should be resolved in favor of Counter-Plaintiffs. *See generally id*.

Counter-Defendant replies that Counter-Plaintiffs have not meaningfully addressed its arguments regarding the 2020 Contract, 2024 Contract, and the Estimates, ECF No. [60] at 1, and although Counter-Plaintiffs argue the 2024 Contract is incomplete, they fail to challenge the authenticity of any of the documents. *Id.* at 2.

A Court may consider a document attached to a motion to dismiss "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Court takes the inquiries in reverse order. As to the "undisputed" issue, the Court finds that Counter-Plaintiffs have not properly placed the contracts or estimates in dispute. Whether a document is disputed does not depend on whether *other* documents ought to be considered as well to have a complete picture; rather, the question is whether the document sought to be introduced is *authentic. Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 582 (11th Cir. 2020). Of course, a plaintiff "can dispute the authenticity of a document simply by saying that the proffered document is not the one referred to in her complaint." *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135

(11th Cir. 2002)). And an invoice can represent a "discrete contract." *Mobius Design Grp., Inc. v. M/Y Serque*, No. 0:14-CV-60652, 2015 WL 1968697, at *5 (S.D. Fla. Apr. 30, 2015). But where, as here, a party does not actually dispute that it signed an agreement that contemplated the issuance of invoices, ECF No. [53-1] ¶ 12, it is without merit to argue that the agreement is inauthentic and that the Court is restricted to looking solely at the invoices as the entire contract. *See Quesada v. Better Earth, Inc.*, No. 6:23-CV-1809-JSS-LHP, 2024 WL 3890077, at *1 n.1 (M.D. Fla. Aug. 21, 2024) (considering a full contract attached to a motion to dismiss where the plaintiff had attached only excerpts of the contract).

Indeed, a court in this district confronted a similar issue and found that because a document does not include "*all conceivable extrinsic documents*" and is thus "incomplete," it does not follow that the document is inauthentic. *Bestmann v. Mach.*, No. 21-23302-CIV, 2022 WL 22969810, at *2 (S.D. Fla. Aug. 15, 2022) (emphasis in original).  Counter-Plaintiffs have not properly placed the authenticity of the 2020 Contract, 2024 Contract, or the Estimates into dispute. *See Lawrence Nali Const. Co. v. Dep't of Revenue*, 366 So. 2d 27, 30 (Fla. 1st DCA 1978) ("The separate invoices are indicia of performance and not a series of separate contracts.").

As to the 2020 Contract and 2024 Contract, they are central to the Amended Counterclaim regarding the Breach of Contract claims, as Counter-Plaintiffs will be required to establish the totality of the terms agreed upon by the parties. As such, those contracts will be necessary to prove a breach. *Comer v. Gerdau Ameristeel US, Inc.*, No. 8:14-CV-607-T-23AAS, 2016 WL 4702425, at *1 (M.D. Fla. Sept. 8, 2016) ("In a breach-of-contract action, the allegedly breached contract is central to the plaintiff's claim." (citing *SFM Holdings, Ltd. v. Bank of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010))). Thus, the Court will consider the contracts incorporated by reference.

The same is true for the Estimates. As Counter-Defendant points out, they "set forth the amounts agreed to for the work upon which Counts II and IV rely." ECF No. [53] at 4. For Counter-Plaintiffs to establish the promises that form the "contract," Counter-Plaintiffs would need to offer the Estimates, which show the agreed-upon amounts. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (holding that a document is central to a plaintiff's claim where the plaintiff "would have had to offer the document in order to prove its case."). Thus, the Court considers the Estimates as well.

Taken together, the Court finds the 2020 Contract, 2024 Contract, and the Estimates are undisputed regarding their authenticity and central to Counter-Plaintiffs' case. The Court will therefore consider these documents, in addition to those proffered by Counter-Plaintiffs, in analyzing the Motion.

### B.  Count I: Breach of Contract (2020 Contract)

Counter-Defendant argues that Counter-Plaintiffs' Breach of Contract claims fail to state a claim. ECF No. [53] at 4. As to Count I, because the 2020 Contract contains a merger and no oral modification clause, Counter-Plaintiffs cannot allege that any oral representation about the engine warranties was a term of the Contract. *Id.* at 5–6. Thus, Counter-Plaintiffs have not plausibly stated a claim for breach of the contract based on the expiration of engine warranties. *Id.* at 6. Additionally, Counter-Plaintiffs' assertion that "other repairs" were not done correctly and that damages are still being assessed is too vague and conclusory to stand. *Id*. Finally, Counter-Plaintiffs have not set forth any value for the alleged damages of Count I. *Id*.

Counter-Plaintiffs respond that they have alleged all the elements of their Breach of Contract claim. ECF No. [57] ¶ 5. They point to the 2020 Invoice as the contract, point to repairs that Counter-Defendant did not perform as the breach, and point to damages based on the warranties expiring, with damages either in the form of the cost of new engines or the depreciated

value of the engines. *Id*. ¶ 7–8. Moreover, the invoice states that the project was meant to take 14 weeks, and Counter-Plaintiffs have adequately alleged that the project took far longer. *Id.* ¶ 1.

Counter-Defendant replies that any representations regarding the engine warranties were not part of the 2020 Contract. ECF No. [60] at 3. Moreover, Counter-Plaintiffs fail to adequately allege the terms of the purported contract or the reasonable value of their damages. *Id.* at 4. Finally, Counter-Plaintiffs' reference to the length of the repairs and warranties against defect are irrelevant, as this was not the breach alleged by Counter-Plaintiff's in Count I. *Id.* at 5.

To recover damages on a breach of maritime contract claim, "a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (citations omitted). "Under federal maritime law, a court 'may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous.'" *United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (11th Cir.1990) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332–33 (5th Cir. 1981)). As a result, "when a maritime contract is unambiguous on its face, the parties' intent must be gathered from the instrument itself without reference to extrinsic evidence." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009).

The parol evidence rule, a substantive rule of contract law, *Garza v. Marine Transp. Lines*, Inc., 861 F.2d 23, 26 (2d Cir. 1988), is articulated as follows in the maritime context:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*F.W.F., Inc.*, 494 F. Supp. 2d at 1358, *aff'd*, 308 F. App'x 389 (quoting 6–26 Corbin on Contracts (MB) § 573 (2006)). "In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party 'to substitute his view of his obligations for those clearly stated.'" *Garza*, 861 F.2d at 26–27 (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)). "However, when the obligations are not clearly stated—when they are ambiguous—the parol evidence rule does not prevent the introduction of extrinsic evidence to aid in interpretation of the contract." *Id.* at 27. "The rule excludes 'only evidence of prior understandings and negotiations which contradicts the unambiguous meaning of a writing which *completely* and *accurately* integrates the agreement of the parties.'" *Id.* (quoting *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 739–40 (2d Cir.1975) (emphasis in original)). Importantly, parol evidence may not be used to add to an already complete and unambiguous contract. *Downs v. U.S. Army Corps of Eng'rs*, 333 F. App'x 403, 411 (11th Cir. 2009) ("[P]arol evidence is admissible only to prove the meaning of ambiguities in the contract and it must not contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction.").

Here, even accepting that the 2020 Invoice attached by Counter-Plaintiffs to the Amended Counterclaim is the only contract at issue, no promise regarding when the warranties would commence was part of the contract. The invoice could, on its own, represent an integrated agreement. It contains all the essential terms of the contract, including pricing and scope of work. It is sufficiently complete and specific to be deemed integrated, as there are no missing terms. In relevant part, the invoice states, "Engines and drives have factory warrants [from] mercury marine." ECF No. [48-1]. That representation is not ambiguous. To hold that Counter-Defendant's

alleged extrinsic communications can be deemed part of the contract would require the Court to add to and modify an already complete and coherent term.

Moreover, to the extent the Court considers the 2020 Contract part of the overarching agreement between the parties, this conclusion is even stronger. The 2020 Contract states that it "constitutes the entire understanding between" the parties and that it "cannot be amended or modified except by [Counter-Defendant]'s express written agreement." ECF No. [53-1] ¶ 13. Thus, any oral representations made regarding when the engine warranties began to run, insofar as they were not reduced to writing, would not be deemed part of the agreement between the parties. In the absence of an enforceable promise by Counter-Defendant regarding when the engine warranties began to run, Counter-Plaintiffs' Breach of Contract claim (Count I) must fail.

### C.  Count II: Breach of Contract (2024 Contract)

As to Count II—which alleges breach of the 2024 Invoice—Counter-Defendant alleges that Counter-Plaintiffs also fail to state a claim. ECF No. [53] at 7. Counter-Plaintiffs do not allege how the paint job violated the terms of the contract, instead merely referring to their own subjective dissatisfaction. *Id*.

Counter-Plaintiffs respond that they have attached a marine survey report that "states in detail the inadequacy of the work including descriptions and pictures of peeling paint." ECF No. [57] ¶ 18. They allege that it was "within the contemplation of the parties that the work would be completed without all of the[se] shortcomings." *Id.* ¶ 20. The 2024 Invoice expressly sets forth a warranty against defects in the paint work. *Id.* ¶ 24.

Counter-Defendant replies that Counter-Plaintiffs fail to plead the terms of the subject contract or point to which particular contract term was breached. ECF No. [60] at 6. Allegations that work was done "incorrectly" are conclusory and insufficiently vague. *Id*. The survey report is not cited in Count II of the Amended Counterclaim; it is only cited in Count IV, so Counter-Plaintiff

cannot now refer to it to shore up an inadequate pleading. *Id*. And even if it had been incorporated properly, the survey report makes no reference to any allegedly breached contractual term. *Id*.

The Court finds that Counter-Plaintiff has adequately stated a claim for breach of contract. As the Court explained above, to recover damages on a breach of maritime contract claim, "a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages." *Sweet Pea Marine, Ltd.*, 411 F.3d at 1249 (citations omitted). Here, Counter-Plaintiff has pointed to the particular term—the invoice states, "All work performed by [Counter-Defendant] warranted against defect as long as paint maintenance is kept up by owner." ECF No. [48-2] at 1. The invoice may be considered a standalone contract, as it contains all essential terms including pricing and scope of work. Alternatively, it may be deemed a written modification to the 2024 Contract, which expressly contemplated and permitted written modifications. ECF No. [1-1] ¶ 16 (permitting modifications with Counter-Defendant's "express written agreement"). In either event, there appears to be a valid express contract with a clear term promising the absence of defects.

Next, Counter-Plaintiffs adequately plead a breach of the contract, attaching a survey report that reflects "inadequacy of the boat peel," "uneven and choppy" painting, and other defects. ECF No. [48] ¶ 32; *see also* ECF No. [48-3]. Counter-Plaintiffs further allege that the upholstery installed was outdated and inadequate for a high-end vessel. ECF No. [48] ¶ 35. Insofar as the contract expressly promised performance without defect, these failures would constitute a breach of contract.

Finally, Counter-Plaintiffs plead the reasonable value of purported damages of $32,150. ECF No. [48] ¶¶ 20, 21. Counter-Defendant's argument that the true price of the upholstery and paint repair was *greater* than what Counter-Plaintiffs actually paid does not change the Court's analysis. If Counter-Defendant breached the contract, it was not entitled to reap the benefits of Counter-Plaintiffs' payment at all. As such, Counter-Plaintiffs' payments—whether in whole or in part—would constitute Counter-Plaintiffs' damages. At this stage of the proceedings and taking the facts in the light most favorable to Counter-Plaintiffs, the Court is satisfied that the reasonable value of Counter-Plaintiffs' damages is discernable from the pleadings. Thus, the Court declines to dismiss Count II.

### D.  Count III: Breach of Contract (2020 Contract – Delay)

Counter-Defendant argues that Count III fails to state a claim. ECF No. [53] at 8. First, the 2020 Contract precludes Counter-Defendant's liability for "loss of use, loss of income, loss of market, or any other incidental or consequential item of loss or damage," ECF No. [53-1] ¶ 5, which is precisely what Counter-Plaintiffs allege. ECF No. [53] at 8–9. Second, it is internally inconsistent to argue that Counter-Defendant breached by failing to complete work on the Vessel until 2025 while also alleging that Counter-Plaintiffs requested additional work be done in early 2024. *Id.* at 9. Third, the Amended Counterclaim contains insufficient allegations as to how Counter-Defendant breached any contract term; merely alleging that the work was delayed is insufficient. *Id*. Fourth, Count III fails to set forth adequate allegations supporting the purported damages, as Counter-Plaintiffs do not show reasonable foreseeability, causation, or reasonable certainty in damages. *Id*. The Amended Counterclaim appears to argue that Yeffet asked for more work to be done, delaying the return of the Vessel, while simultaneously arguing that Counter-Defendant was responsible for the delay. *Id.* at 9–10. Fifth, Count III does not allege that the delay caused any loss in value, nor does it separate out the "inherent depreciation" of a vessel over time.

*Id.* at 10. Sixth, the Court should consider the effects of the COVID-19 pandemic on any delay. *Id.* Seventh, Counter-Plaintiffs are alleging damages based on larger, more expensive engines, not the engines contracted for. *Id.* at 10–11.

Counter-Plaintiffs respond that the 2024 Invoice required the work to be completed in 14 weeks. ECF No. [57] ¶ 27. Counter-Defendant's failure to do so is a breach of the invoice, which supersedes the earlier 2020 Contract. *Id.* Moreover, Counter-Defendant cannot, as a matter of law, absolve itself of all liability by contract. *Id.* ¶ 30. In addition, Yeffet's request for additional work was made "many months after" the 14-week period began to run. *Id.* Next, any argument about internal inconsistencies "does not make sense as it took years to finish the work"—that is, the only reason the Vessel would have been in the marina was for repairs, making clear that the delay was caused by Counter-Defendant. *Id.* ¶¶ 31, 32. Furthermore, Counter-Plaintiffs' damages are shown with reasonable certainty and include two alternative computations—the decrease in the value of the boat and the costs of the new engines with factory warranties less the salvage value of the engines that no longer have warranties. *Id.* ¶ 33. Finally, arguments about COVID-19 delays fall flat where the repairs took over three years. *Id.* ¶ 35.

Counter-Defendant replies that Count III relies on contractual guarantees that do not exist, as it offers only conclusory allegations of untimeliness. ECF No. [60] at 7. Moreover, many of Counter-Defendant's arguments are unrebutted by Counter-Plaintiffs. *Id.* at 7–8.

The Court finds that Counter-Plaintiffs have adequately stated a claim for breach of contract based on delay. The 2024 Invoice attached to the Amended Counterclaim states, "Time for this project is 14 weeks from deposit of 50%." ECF No. [48-1] at 2. That term is unequivocal and does not contain any language that it is an estimate. Counter-Plaintiffs allege that the initial work took over four years, ECF No. [48] ¶ 23, which would constitute a breach of the 14-week

timeline. And Counter-Plaintiffs adequately allege damages in the form of a reduction in value of the Vessel from $225,000 to between $50,000 and $80,000. *Id.* ¶ 24. Those allegations are straightforwardly sufficient to survive a motion to dismiss.

Counter-Defendant's arguments to the contrary are unavailing. Even if the 2020 Contract is considered part of the overall contractual relationship between the parties, that contract contemplated modification by "express written agreement." ECF No. [53-1] ¶ 13. Thus, the 2024 Invoice—an express written agreement—was able to modify any disclaimers of liability contained within the 2020 Contract, and there do not appear to exist any "internal inconsistencies." The factual question of how long it took Counter-Defendant to complete the work contemplated by the 2020 Invoice is entirely distinct from additional work requested by the Counter-Plaintiffs. The Amended Counterclaim—considered with the documents incorporated by reference—points to a specific contractual term that was breached, namely, the term that described the project as taking 14 weeks. The Amended Counterclaim adequately alleges damages, as it points to the diminution in the Vessel's value that Counter-Plaintiffs would not have experienced had the repairs been completed in a timely manner. The exact measure of damages attributable to Counter-Defendant's delay need not be resolved at the motion to dismiss stage; it is sufficient that Counter-Plaintiffs point to damages and that it is plausible that those damages are attributable to Counter-Defendant's breach.

Counter-Defendant's argument that Counter-Plaintiffs' proffered amount of damages fails to account for inherent depreciation is a factual question, and that Counter-Defendant disagrees with the amount of damages or the calculation thereof does not result in a defective pleading. Any effects of COVID-19 on delays are not suitable for consideration at this stage and arguments regarding larger, more expensive engines are without merit, as the Court may look to Counter-

14

Plaintiffs' alternative measure of damages—the Vessel's diminution in value.      Dismissal of Count III—alleging breach of contract for Counter-Defendant's delay—is denied.

### E.  Count IV: Breach of Warranty of Workmanlike Performance

Counter-Defendant next argues that Count IV must be dismissed because Counter-Defendant waived all warranties. ECF No. [53] at 11. The 2024 Contract contained a waiver of all express and implied warranties, so as a matter of law, this claim cannot be maintained. *Id.* at 11–12. Moreover, Count IV pleads the incorrect standard and fails to allege the essential elements of breach of workmanlike performance. *Id.* at 12. Specifically, the relevant standard is not whether the work was satisfactory to Counter-Plaintiffs' subjective tastes, but whether Counter-Defendant failed to perform the relevant work "properly and safely." *Id.* at 12–13 (citation omitted).

Counter-Plaintiffs respond that the marine survey report addresses the issues with the paint job, ECF No. [57] ¶ 37, and the work was below the expected standard when viewed from up close. *Id.* ¶ 38. The Amended Counterclaim also alleges that the upholstery was outdated. *Id.* ¶ 43.

Counter-Defendant replies that Counter-Plaintiffs continue to assert an incorrect standard for breach of warranty of workmanlike performance. ECF No. [60] at 8. Moreover, the 2024 Contract exonerates Counter-Defendant for breach of any implied warranties. *Id.* at 9.

The implied warranty of workmanlike performance exists for every contract under general maritime law and obligates one undertaking repairs to perform his services with reasonable care, skill, and safety. *Vierling*, 339 F.3d at 1315 (citing *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 132–35 (1956)). This is alternatively phrased as a "reasonable level of '[c]ompetency and safety.'" *Id*. "The standard of the skill required is the degree of skill, efficiency, and knowledge that is possessed by those of ordinary skill, competency, and standing in the particular trade or business for which the person is employed, and where the contract does not provide for a higher degree of skill, only ordinary skill and the degree of skill adequate to the

performance of the undertaking is required." 17A AM. JUR. 2D CONTRACTS § 599. "No breach will be found if the contractor performed the work in accordance with industry standards." *Id*.

Importantly, the implied warranty of workmanlike performance parallels a negligence standard. *Northern Ins. Co. of N. Y. v. Point Judith Marina, LLC*, 579 F.3d 61, 67 (1st Cir. 2009) (quoting *La Esperanza de P.R., Inc. v. Perez y Cia. de Puerto Rico, Inc.*, 124 F. 3d 10, 16 (1st Cir. 1997)). As with any action for negligence under maritime law, general principles of negligence apply. *Chaparra v. Carnival Corp.*, 693 F. 3d 1333, 1336 (11th Cir. 2012) (citing *Daigle v. Point Landing, Inc.*, 616 F. 2d 825, 827 (5th Cir. 1980)). Thus, a plaintiff must prove four elements: (1) that the defendant owed the plaintiff a duty to protect against a particular injury (here, defective paint and upholstery work); (2) that the defendant breached that duty; (3) that the breach actually and proximately caused the plaintiff's injury; and (4) that the plaintiff suffered actual harm. *Id*. (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008)).

Here, the allegations support that upon undertaking the paint and upholstery work pursuant to the contract between the parties, Counter-Defendant owed Counter-Plaintiffs a duty of reasonable competency and skill. Moreover, any disclaimer of liability in the 2024 Contract is belied by the 2024 Invoice, which states, "All work performed by [Counter-Defendant] warranted against defect as long as paint maintenance is kept up by owner." ECF No. [48-2] at 1.

Counter-Defendant undertook to paint and reupholster the boat, and the survey report described "substandard quality of workmanship as a whole." ECF No. [48-3] at 16. The report stated that while the work was "acceptable" from a distance, when viewed up close, the paint job on the boat was "below the quality standard that would be expected." *Id.* at 17. In this regard, Counter-Plaintiffs have adequately alleged performance below industry standards and, as a result, a breach of the duty assumed by Counter-Defendant. Furthermore, the survey report, as

16

incorporated into the Amended Counterclaim, supports the inference that it was Counter-Defendant's paint work that caused the defects.

Finally, Counter-Plaintiffs allege actual harm. Specifically, Counter-Plaintiffs seek reimbursement for the $32,150.00 paid toward the unsatisfactory work. ECF No. [48] ¶ 40. Those allegations are sufficient to sustain a claim of breach of the warranty of workmanlike performance. The Court does note, however, that the Amended Counterclaim does not allege the ways in which the *upholstery* failed to meet "industry standards." The mere allegation that it was "outdated and not good enough for a high-end vessel" does not suffice, especially insofar as the 2024 Invoice reveals that the upholstery choices were made "as per customer." ECF No. [48-2] at 1. That said, insofar as Counter-Plaintiffs have plausibly alleged breach of the warranty of workmanlike performance with respect to the paint work, the Court finds dismissal of the claim unwarranted, and the Motion is denied as to this Count IV.

### F. Count V: Negligent Misrepresentation

Counter-Plaintiffs allege that Counter-Defendant's employee, Robby Kessler, negligently misrepresented that the warranties on the two new engines would not begin to run until the Vessel left Counter-Defendant's marina. EF No. [48] ¶¶ 41, 42. Counter-Defendant argues that Count V is barred by the economic loss rule and fails to plead the essential elements, in particular lacking the requisite specificity. ECF No. [53] at 14–16. Counter-Plaintiffs respond that they specifically named the person who made the misrepresentation. ECF No. [57] ¶ 44. Moreover, Count V is pled in the alternative and is meant to apply if the Court finds there is no applicable contract. *Id.* ¶ 45. Counter-Defendant responds that Count V was not pled in the alternative, that Counter-Plaintiffs conceded several arguments, and that Count V still fails to meet the heightened pleading standard for negligent misrepresentation claims. ECF No. [60] at 9–10.

17

As an initial matter, the Court finds that federal maritime law recognizes claims of negligent misrepresentation. *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 535 (5th Cir. 2003); *see also Hale Container Line, Inc. v. Houston Sea Packing Co.*, 137 F.3d 1455, 1471 (11th Cir. 1998) (applying general tort principles regarding negligent misrepresentation to a maritime case). To state a claim for negligent misrepresentation, a plaintiff must allege the following: (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364 (S.D. Fla. 2019), *appeal dismissed*, No. 19-13725-DD, 2019 WL 7167484 (11th Cir. Nov. 25, 2019). Insofar as negligent misrepresentation is a fraud-based claim, it is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which is satisfied where the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1206 (S.D. Fla. 2020) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "[T]o pass Rule 9(b) muster, the Complaint must set forth particular allegations about the 'who, what, when, where, and how' of the fraud." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

However, even where a plaintiff otherwise states a claim for an unintentional tort, the economic loss rule provides that "a plaintiff suing for an unintentional tort cannot recover 'for

18

economic losses not associated with physical damages.'" *Heinen v. Royal Caribbean Cruises LTD.*, 806 F. App'x 847, 850 (11th Cir. 2020) (quoting *Kingston Shipping Co. v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982)). Indeed, the prevailing view is that "physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort." *State of La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir. 1985) (*en banc*).

Here, even if Counter-Plaintiffs could adequately plead negligent misrepresentation, the Court would nonetheless find the claim barred by the economic loss rule. Counter-Plaintiffs "do not allege that their out-of-pocket expenses stem from physical injury to their person or property," *Heinen*, 806 F. App'x at 850—they allege purely economic losses from opting to replace the engines with more powerful ones that had more preferable warranties. Multiple cases support the conclusion that this claim is barred by the economic loss rule. *See, e.g.*, *My Buddy Davis, LLC v. Starboard Yacht Grp., LLC*, No. 0:22-CV-60542-KMM, 2022 WL 22989023, at *5 (S.D. Fla. June 16, 2022) (finding a fraudulent inducement claim barred by the economic loss rule where the plaintiff alleged that the defendant's material representations fraudulently induced the plaintiff to enter into a maritime contract); *Flagship Marine, LLC v. RMK Merrill Stevens, LLC*, 822 F. Supp. 3d 1311, 1316 (S.D. Fla. 2026) (finding that the maritime economic loss rule applies even in the absence of contractual privity, so long as the damages were purely economic); *BVI Marine Const. Ltd. v. ECS-Fla., LLC*, No. 12-80225-CIV, 2013 WL 6768646, at *5 (S.D. Fla. Dec. 20, 2013 (dismissing fraudulent misrepresentation and negligent misrepresentation claims as barred by the maritime economic loss rule); *Hercules Carriers, Inc. v. Florida*, 720 F.2d 1201, 1984 AMC 2962 (11th Cir.1983), *reh'g denied* 728 F.2d 1359 (11th Cir. 1984) (finding that owners of vessels delayed as a result of defendant's ship blocking the passage out of port could not recover purely economic damages caused by the delay); *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*,

No. 06-60889-CIV, 2008 WL 11399630, at *9 (S.D. Fla. Mar. 6, 2008) (finding that the maritime economic loss rule "applies even when there is no privity nor an alternative theory of recovery" (citations omitted)).

The economic loss rule is also often framed as "provid[ing] that a tort action may not lie where the basis for liability arises from a contract." *R/V Beacon, LLC v. Underwater Archeology & Expl. Corp.*, No. 14-CIV-22131, 2014 WL 4930645, at *5 (S.D. Fla. Oct. 1, 2014). According to this formulation, "[a] tort may be deemed independent of a contract and, therefore, not subject to the economic loss rule, where the allegedly tortious conduct is separate and unrelated to any contractual provisions." *McSweeney v. MSC Cruises (USA), Inc.*, No. 14-CIV-62402, 2015 WL 12543901, at *3 (S.D. Fla. Sept. 28, 2015). However, even under this formulation, the claim brought by Counter-Plaintiffs would be barred, as the alleged tort is not entirely independent of the contract.

The Court finds dismissal of the negligent misrepresentation claim warranted and grants the Motion as to Count V.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1. Plaintiff's Motion, **ECF No. [53]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Counts I and V of the Amended Counterclaim, **ECF No. [48]**, are **DISMISSED.**

3. Counter-Defendant shall file an Answer to the Amended Counterclaim by **July 24, 2026**.

Case No. 25-cv-23774-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 10, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

21